# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

MARC HARRIS                                                                          PLAINTIFF

v.                                    NO. 4:04CV02299 SWW/HDY

DAVID GREEN, TAGOS ROBINSON,                                          DEFENDANTS
and RICK HARMON

## FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following findings and recommendation have been sent to United States District Judge Susan Webber Wright.  Any party may serve and file written objections to these findings and recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the Office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendation.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.   Why the record made before the Magistrate Judge is inadequate.

2.   Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.   The details of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, Arkansas 72201-3325

DISPOSITION

INTRODUCTION. Defendants David Green ("Green"), Tagos Robinson ("Robinson"), and Rick Harmon ("Harmon") have filed the pending joint motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. See Document 67.[1] For the reasons that follow, the undersigned recommends that the motion be granted, that this proceeding be dismissed, and that judgment be entered for the defendants.

FACTS. The defendants have filed a statement of material facts in accordance with Local Rule 56.1(a).[2] Plaintiff Marc Harris ("Harris") has not responded by filing a statement of material facts in accordance with Local Rule 56.1(b).[3] Instead, he has identified a few allegedly contested facts in his response and accompanying brief. The undersigned has reviewed the record in this proceeding and finds that the facts identified by Harris are either not in dispute or not material. In fact, he concedes that "the facts are not largely in dispute." See Document 74 at 7. The undersigned finds that the material facts are not dispute and that they are as follows:

---

[1]

Federal Rule of Civil Procedure 56 provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

[2]

Local Rule 56.1(a) requires the moving party to "annex to the notice of motion a separate, short and concise statement of the material facts as to which it contends there is no genuine issue to be tried."

[3]

Local Rule 56.1(b) requires the non-moving party to file, in addition to any response and brief, a "separate, short and concise statement of the material facts as to which it contends a genuine issue exists to be tried."

During the early evening hours of February 23, 2004, Harris broke into the unoccupied home of Anthony White ("White") at 1212 Center Street, Little Rock, Arkansas. Harris did so by breaking a piece of a window with a screwdriver. After breaking the window, Harris put the screwdriver in his pocket. He entered White's home and found, inter alia, a .22 caliber pistol and a box of .22 caliber shells.

At some point during the course of the break-in, White returned home and found Harris inside the home. Harris fled, taking with him the .22 caliber pistol and the box of .22 caliber shells. White gave chase. As Harris was fleeing, he turned and fired a shot at White. At that point, White wisely ended his pursuit. Harris ran into the neighborhood and, as he ran through an alley, he stopped to hide the .22 caliber pistol and the box of .22 caliber shells on the roof of a shed.

The City of Little Rock, Arkansas, Police Department ("Police Department") was contacted, and its radio dispatcher thereafter broadcast two alerts: first, that a burglary was in progress at 1212 Center Street; and second, that the homeowner had advised that the suspect was armed and had fired a shot. Green, an officer with the Police Department, was the first officer to arrive at 1212 Center Street. He was advised by White that Harris, while fleeing, had fired a shot at White. Shortly thereafter, Robinson, also an officer with the Police Department, arrived at 1212 Center Street. When Robinson arrived, he was apprised of the situation, and Green left to begin searching for Harris in the neighborhood.

-4-

After some period of time, Green saw Harris on the porch of a house at 1523 South Broadway.  Green parked his patrol car and called for back-up.  He then directed Harris to come toward the patrol car.  Harris did not comply but jumped off the porch at 1523 South Broadway and ran between the houses at 1517 South Broadway and 1523 South Broadway.  Green called for back-up and reported that he was in foot pursuit of Harris.

Robinson responded to Green's call for assistance, and Green and Robinson began searching for Harris around the houses at 1517 South Broadway and 1523 South Broadway.  Green and Robinson were soon joined by Harmon and Scott Dettmer ("Dettmer"), both of whom are also officers with the Police Department.

After some period of time, Robinson noticed Harris' foot sticking out of an area between a shed in the backyard of 1517 South Broadway and a privacy fence separating the houses at 1517 South Broadway and 1523 South Broadway.  Green and Robinson commanded Harris to show his hands and surrender, but he chose to flee.  He ran through the backyard of 1517 South Broadway and towards its front yard.  He encountered Green, Robinson, Harmon, and Dettmer standing in an area between the houses at 1517 South Broadway and 1523 South Broadway.  Green and Robinson had their flashlights trained on Harris, and each officer had his handgun drawn.  Harris stopped, and he began pacing from side to side roughly fifteen to twenty feet from the officers.[4]

---

[4]

Green, Robinson, and Harmon had clear views of Harris at all time.  Dettmer was standing partially behind a large bush and did not have a clear view of Harris at all times.

Harris had his hands in his pockets, and Harmon observed Harris moving his hands around in his pockets. One or more of the police officers issued commands for Harris to remove his hands from his pockets and show his hands. He removed his hands from his pockets, and Green, Robinson, and Harmon each saw a "metallic object in [Harris'] right hand." See Document 68 at 8.[5] Green, Robinson, and Harmon each believed that the object was a handgun.[6]

Green, Robinson, and Harmon immediately fired their handguns at Harris. They fired a total of eleven rounds, striking Harris either twice or three times in the thigh and foot.[7] He was then arrested and taken into custody. It was only after he was arrested that the police officers discovered that the object he had taken from his pockets was not a handgun but was instead a screwdriver.[8]

---

[5]

The defendants acknowledge, as they must, that the metallic object in Harris' right hand was the screwdriver he had apparently used to break into White's home; they maintain, however, that the screwdriver was "shiny." See Document 68 at 8. Harris maintains that the screwdriver was not "shiny" but was instead dark in color, save a small area below the handle. Whether the screwdriver was "shiny" is not a material fact.

[6]

Green and Robinson, in fact, each believed that the object was the .22 caliber pistol that White had reported stolen and that was apparently used by Harris to fire at White.

[7]

In the amended complaint filed by counsel, it is alleged that Harris was struck "three times in the legs and foot ..." See Document 59 at 2. In the response to the defendants' motion for summary judgment, it is alleged that Harris was struck "once in the thigh and once in the foot." See Document 74 at 3. The number of times he was struck is not, however, a material fact.

[8]

White's .22 caliber pistol, and the box of .22 caliber shells, were subsequently found by Detter in a nearby alley.

PLEADINGS.   Harris commenced this proceeding by filing a pro se complaint pursuant to 42 U.S.C. 1983 and joining the officers involved in his arrest.   In a subsequent pro se amended complaint, he joined the officers in their individual and official capacities and alleged that they violated his federal constitutional rights by using excessive force during his arrest.

Counsel was thereafter appointed to represent Harris in this proceeding.  Counsel filed an amended complaint on Harris' behalf and alleged that the officers violated his federal constitutional rights by using excessive force during the course of his arrest, specifically, that they violated his Fourteenth Amendment right to due process of law and his Fourth Amendment right to be free from unreasonable arrest.   For the alleged violation of Harris' rights, counsel sought monetary damages.

The defendants have now filed a motion for summary judgment.  They maintain that they did not violate Harris' constitutional rights.  With specific regard to Harris' Fourteenth Amendment claim, they maintain that Graham v. Conner, 490 U.S. 386 (1989), precludes such a claim.  With specific regard to his Fourth Amendment claim, they maintain that their use of force was objectively reasonable.  In addition, they maintain the following: (1) "[t]he lawsuit against [them] in their official capacities is tantamount to an action against the City [of Little Rock and] … that [he] cannot sustain his burden of proving any cause of action against the City," see Document 67 at 1-2; and (2) they are shielded from liability for damages by qualified immunity.

In response, Harris first maintains that the following additional facts are worth noting: (A) the object he had was not shiny, thus, "the testimony from the [police] officers that they saw a shiny object is difficult to reconcile with the physical characteristics of the screwdriver," see Document 74 at 1; (B) he had no practical means of escape and "had no way to escape unless he tried to go through the missing board in the fence or climbed the fence which he was not showing an indication of doing," see Document 74 at 2; (C) he was not acting in an aggressive manner; (D) the officers did not implement alternatives to the use of deadly force, specifically, they did not attempt to obtain and use a "Taser;" and (E) the officers are trained to aim at the center mass of a suspect, and the officers' aim in this instance was not consistent with their training.

Harris also maintains that three legal issues must be addressed. They are as follows:

> The first issue is whether the issue of deadly force is a question of fact to be decided by the jury or is it a question of law. The appellate court decisions are divided on this issue and turn on the particular facts and circumstances involved. Moreover, there are different inferences to be drawn from the facts in the instant case that makes summary judgment inappropriate. Secondly, "excessive force" cases are not appropriate for qualified immunity because the constitutional right is so clear. Lastly, the City of Little Rock is not a named party herein as [Harris] is not pursuing a cause of action against the City; however, the officers have been sued in their official capacities and as such the City is responsible for a judgment rendered against the officers.

See Document 74 at 3.

HARRIS' FOURTEENTH AMENDMENT CLAIM.   Harris alleges that his Fourteenth Amendment right to due process of law was violated when the defendants used excessive force during the course of his arrest.  In Graham v. Conner, 490 U.S. 386, 388 (1989), the United States Supreme Court was called upon to decide "what constitutional standard governs a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest …"  The Supreme Court held that "such claims are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard."  See Id.  Because Harris' assertion of excessive force is properly analyzed under the Fourth Amendment, the undersigned recommends that his Fourteenth Amendment claim be dismissed with prejudice.

HARRIS' FOURTH AMENDMENT CLAIM.   Harris also alleges that his Fourth Amendment right to be free from unreasonable arrest was violated when the defendants used excessive force during the course of his arrest.  In Krueger v. Fuhr, 991 F.2d 435 (8th Cir. 1993), the United States Court of Appeals for the Eighth Circuit outlined the law governing such a claim; it is as follows:

> It is well settled that police officers may use some degree of force in effecting a lawful arrest.  Graham v. Connor, 490 U.S. 386 … (1989).  Determining whether the use of force is reasonable in any given instance requires careful balancing of "'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'"  [Tennessee v. Garner, 471 U.S. 1, 8 (1985)].  The use of deadly force is constitutionally reasonable in certain limited circumstances:

Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

...

... Reasonableness must be determined from the point of view of a reasonable officer in the situation, "rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396 ... An erroneous perception or belief does not violate the Fourth Amendment if such perception or belief is objectively reasonable. Id.

...

The second prong of the [Tennessee v. Garner] test is whether the use of deadly force was necessary to prevent escape. ... Compare Daniels v. Terrell, 783 F.Supp. 1211 (E.D.Mo.1992) (officer's use of deadly force objectively reasonable when plaintiff fired on officer and was running from police) with Fitzgerald v. Patrick, No. 88-0499-CV-W-5, 1990 WL 485439, 1990 U.S.Dist. LEXIS 1406. (W.D.Mo. Feb. 5, 1990) (suspect in trailer surrounded by police officers was not fleeing). ... [T]he Fourth Amendment does not require police officers to forgo the use of deadly force to prevent their own death or serious physical injury whenever there is a possibility that another officer might later apprehend the fleeing suspect. See e.g. Fraire v. Arlington, 957 F.2d 1268, 1276 (5th Cir.) cert. denied 506 U.S. 973, 113 S.Ct. 462, 121 L.Ed.2d 371 (1992) (use of deadly force to prevent officer's own death or serious bodily harm was justified); Reese v. Anderson, 926 F.2d 494, 501 (5th Cir.1991) (where suspect reached several times for firearm, officer justified in using deadly force to defend himself and others even where suspect "totally surrounded" by police officers).

-10-

Finally, [Tennessee v. Garner] requires the officer to give a warning "where feasible."  …

See Krueger v. Fuhr, 991 F.2d at 438-440.

The material facts are not in dispute, and the question of the reasonableness of the force used by the defendants is capable of being resolved at the summary judgment stage.[9]  The facts establish that in the moments before Harris was confronted between the houses at 1517 South Broadway and 1523 South Broadway, reasonable police officers would have probable cause to believe that he posed a threat of serious physical harm. Specifically, reasonable officers would have known the following: (A) that a man matching Harris' description was a suspect in a burglary; (B) that a man matching Harris' description had taken a handgun in the burglary; (C) that a man matching Harris' description had fired a shot at the homeowner; (D) that Harris had refused Green's request to come to his patrol car but had instead fled; (E) that Harris had hid himself; and (F) that when discovered, he refused a command to show his hands and surrender but instead continued fleeing.  Reasonable officers would not have known, however, that Harris had hidden the .22 caliber pistol and box of .22 caliber shells.

---

[9]

Harris cites Duncan v. Storie, 869 F.2d 1100 (8th Cir. 1989), for the proposition that the alleged use of excessive force is generally an issue of fact.  The undersigned does not disagree.  However, in Scott v. Harris, — U.S. —, 127 S.Ct. 1769, 1776 n.8, 167 L.Ed.2d 686 (2007), the Supreme Court noted that at the summary judgment stage, once a court has determined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supportable by the record, the reasonableness of a police officer's actions is "a pure question of law."

The facts establish that upon confronting Harris between the houses at 1517 South Broadway and 1523 South Broadway, reasonable police officers would have probable cause to believe that he continued to pose a threat of serious physical harm. Specifically, reasonable officers would have observed the following: (1) that Harris had stopped running but did not appear to have completely surrendered; (2) instead, he was pacing from side to side between the houses; (3) that he had his hands in his pocket and, possibly, moving his hands around in his pockets; and (4) that when he removed his hands from his pockets as ordered, he had a metallic object in his right hand. Reasonable officers could believe that the metallic object in Harris' right hand was a handgun. They could so believe because they possessed information that a suspect matching Harris' description had used a handgun a few minutes earlier. Although their belief ultimately proved incorrect, i.e., the metallic object in his right hand was not a handgun but was instead a screwdriver, their belief was objectively reasonable, and an erroneous but objectively reasonable belief does not violate the Fourth Amendment. See Krueger v. Fuhr, 991 F.2d at 439. See also Ngo v. Storlie, 495 F.3d 597 (8th Cir. 2007); Thompson v. Hubbard, 257 F.3d 896 (8th Cir. 2001).[10]

---

[10]

In Thompson v. Hubbard, a police officer mistakenly believed that a suspect possessed a handgun. The Court of Appeals opined that the officer was not constitutionally required to "wait until he sets eyes upon [the handgun] before employing deadly force." See Id., 257 F.3d at 899. In Ngo v. Storlie, the Court of Appeals clarified the foregoing rule in the following manner: "this rule applies when an officer is trying to 'protect himself against a fleeing suspect' who is armed or reaching for what appears to be a weapon." See Id., 495 F.3d at 603 [quoting Thompson v. Hubbard]

Given the foregoing facts, reasonable police officers could believe that Harris possessed a handgun and that he intended to inflict, or threatened to inflict, serious physical harm on Green, Robinson, Harmon, and/or Dettmer.   In addition, there was probable cause for reasonable officers to believe that Harris had committed a crime involving the infliction or threatened infliction of serious physical harm.

"The second prong of the [Tennessee v. Garner] test is whether the use of deadly force was necessary to prevent escape." See Id. at 440.   The facts establish that Green, Robinson, Harmon, and/or Dettmer had been pursuing Harris since he was seen by Green on the porch of the house at 1523 South Broadway.   They eventually came to block his path as he was attempting to run between the houses at 1517 South Broadway and 1523 South Broadway.   He stopped running and began pacing from side to side.   Did he intend to continue fleeing?   The undersigned does not know the answer to that question, and the defendants will not be second-guessed if they believed that he had not completely surrendered but intended to continue fleeing.   Specifically, reasonable police officers could believe that Harris had not completely surrendered.[11]

---

[11]

Harris maintains that he had no practical means of escape and was not aggressing toward Green, Robinson, Harmon, and/or Detter.   With regard to a means of escape, he himself acknowledges, though, that "he had no way to escape unless he tried to go through the missing board in the fence or climbed the fence which he was not showing an indication of doing." See Document 74 at 2.   Thus, he had a means of escape; whether he would have chosen to do so is unknown.   With regard to his lack of aggression toward Green, Robinson, Harmon and/or Detter, it may be true that he was not being aggressive at that moment. The defendants maintain, and the facts bear out, though, that the amount of time between the beginning of the confrontation and the shots being fired was a matter of seconds.

Last, <u>Tennessee v. Garner</u> requires the police officers to give a warning "where feasible." <u>See</u> <u>Id</u>. at 440. The facts establish that the amount of time between the commencement of the confrontation and the shots being fired by Green, Robinson, and Harmon was only a matter of seconds. Within that period of time, however, they commanded Harris to show his hands. Although not specifically a command to surrender, the warning was certainly adequate to put him on notice that he was to cooperate.

Given the forgoing, and having balanced the nature and quality of the intrusion on Harris' Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion, the undersigned is satisfied that the defendants' use of force was reasonable. The undersigned recommends that Harris' Fourth Amendment claim be dismissed with prejudice.[12]

---

[12]

An additional note is in order. Notwithstanding the second prong of the <u>Tennessee v. Garner</u> test, <u>i.e.</u>, the inquiry into whether the use of deadly force was necessary to prevent escape, <u>Krueger v. Fuhr</u> cites with approval <u>Reese v. Anderson</u>, 926 F.2d 494 (5th Cir.1991). In that case, police officers surrounded an automobile that had spun out of control after a high speed chase. An occupant of the automobile, who was believed to have a criminal background, was warned to show his hands. He was observed, though, reaching under a seat. A police officer believed the occupant was reaching for a handgun and that he intended to use it. The officer fired his handgun and killed the occupant. On appeal, the United States Court of Appeals for the Fifth Circuit found the following:

> The fact that the vehicle was "totally surrounded" by police [officers] does not change matters; had [the occupant] in fact retrieved a gun from beneath his seat, he could have caused injury or death despite the presence of numerous police officers. Also irrelevant is the fact that [the occupant] was actually unarmed. [The police officer] did not and could not have know this. The sad truth is that [the occupant's] actions alone could cause a reasonable officer to fear imminent and serious physical harm.

<u>See</u> <u>Id</u>. at 501. Applying the foregoing to the proceeding at bar, there is some support for the proposition that even if Harris had stopped fleeing, Green, Robinson, and Harmon were justified in using deadly force as they could reasonably believe that Harris possessed a handgun and was attempting to use it.

OFFICIAL CAPACITY.  Harris has joined the defendants in not only their individual

capacities but in their official capacities as well.  With regard to official capacity claims,

the body of relevant case law is well settled:


>     A [section] 1983 action against a government official in his official
> capacity, . . . , is tantamount to an action directly against the public entity
> of which the officer is an agent.  See Monell v. Department of Social
> Services, [...]  "It is not a suit against the official personally, for the real
> party in interest is the entity."  Kentucky v. Graham, [...]  In an official-
> capacity suit, the plaintiff must prove more than that his constitutional
> rights were violated by the named individual defendants, for a
> governmental entity is liable under [section] 1983 only when the entity
> itself is a "moving force" behind the violation.  That is, the entity's official
> "policy or custom" must have "caused" the constitutional violation; there
> must be an "affirmative link" or a "causal connection" between the policy
> and the particular constitutional violation alleged.  See City of Oklahoma
> City v. Tuttle, [...]


See Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir. 1987) [emphasis in original].   The

undersigned is satisfied that the defendants' use of force was reasonable.  Specifically,

they could reasonable believe that Harris possessed a handgun and intended to inflict,

or threatened to inflict, serious physical harm on them; that Harris had committed a

crime involving the infliction or threatened infliction of serious physical harm; that he

had not completely surrendered; and that he was warned to cooperate.  Because he

cannot establish a violation of his Fourth Amendment right, his official capacities claims

against the defendants must also fail.

-15-

RECOMMENDATION.  In conclusion, the undersigned recommends the following: (1) because Harris' assertion of excessive force is properly analyzed under the Fourth Amendment, his Fourteenth Amendment claim should be dismissed with prejudice; (2) because the defendants' use of force was reasonable, his Fourth Amendment claim should be dismissed with prejudice; (3) his official capacity claims against the defendants should be dismissed; and (4) the defendants' assertion of qualified immunity should not be addressed.  The undersigned therefore recommends that the defendants' motion for summary judgment be granted, that this proceeding be dismissed, and that judgment be entered for the defendants.

DATED this ___7___ day of November, 2008.

_____

UNITED STATES MAGISTRATE JUDGE